UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERESA BASCO, ET AL.,

       Plaintiffs,

v.                                                 Case No. 8:06-cv-260-T-24 MSS

GIL MACHIN, ET AL.,

       Defendants.
_____/

**ORDER**

This cause comes before the Court on three motions: (1) Defendants' Motion for Summary Judgment (Doc. No. 34), which Plaintiffs oppose (Doc. No. 47); (2) Defendants' Request to Take Judicial Notice (Doc. No. 41); and (3) Plaintiffs' Unopposed Request for Oral Argument Upon Defendants' Motion for Summary Judgment (Doc. No. 48).

**I. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. See id. When a moving party has discharged its burden, the non-moving party must

then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II.  Background

Teresa Basco ("Mrs. Basco") was a qualified participant in the Section 8 Program, Health and Social Services Department of Hillsborough County, Florida.  Section 8 is the Hillsborough County agency that administers the Housing Choice Voucher rental-assistance program for Housing and Urban Development ("HUD").  (Matalon affidavit,[1] ¶ 3).  Section 8 provides monetary rental assistance to qualified landlords of rental units on behalf of qualified Section 8 participants.  (Matalon affidavit, ¶ 3).

---

[1] Doc. No. 35

As the Section 8 participant, Mrs. Basco entered into a lease with Donna Vanderlaan, who is Mrs. Basco's mother, for a single-family residence located at 4003 Oklahoma Avenue, Tampa, Florida 33616 ("Assisted Unit"). (Matalon affidavit, ¶ 7). The lease period was from February 1, 2005 through January 31, 2006). (Matalon affidavit, Ex. 2). On the face of the lease, Mrs. Basco indicated that only she, her husband Joseph Basco ("Mr. Basco"), and five minor children would be the residents of the Assisted Unit. (Matalon affidavit, Ex. 2).

Section 8 entered into a Housing Assistance Payments Contract ("HAP Contract") with Vanderlaan in which Section 8 agreed to pay a determined amount each month directly to Vanderlaan on behalf of Mrs. Basco. (Matalon affidavit, ¶ 8). The HAP Contract restricts the residents of the Assisted Unit to Mrs. Basco, Mr. Basco, and the five minor children. (Matalon affidavit, Ex. 3).

Section 8 could terminate its assistance to Mrs. Basco if the Basco family violated any of the family obligations set forth in 24 C.F.R. § 982.551. 24 C.F.R. § 982.552(c). One of the family obligations set forth in § 982.551 was that the composition of the family residing in the assisted unit must be approved by the public housing agency ("PHA") and that "[n]o other person [i.e., nobody but members of the assisted family] may reside in the unit." 24 C.F.R. § 982.551(h)(2). On November 30, 2005, Mrs. Basco signed a form entitled "Family Obligations" wherein she acknowledged, among other things, her duty to provide Section 8 with any changes in the family composition, her duty not to permit disturbances that may interfere with the peace and comfort of her neighbors, and her duty to supply true and complete information to Section 8. (Matalon affidavit, ¶ 6 and Ex. 1 thereto).

Mrs. Basco's case was assigned to Sara J. Matalon as the Section 8 Housing Counselor.

3

(Matalon affidavit, ¶ 5). On or about November 3, 2005, an anonymous person, identifying themselves as Mrs. Basco's neighbor, telephoned Section 8 to provide information regarding disturbances at the Assisted Unit, multiple police calls to the Assisted Unit, and a member of the household of the Assisted Unit having been arrested. (Matalon affidavit, ¶ 9). In response, Matalon requested that the Tampa Police Department provide her with a copy of all police reports regarding the Assisted Unit since January 1, 2005. (Matalon affidavit, ¶ 11).

Two of the police reports indicate that an Emanuel/Elonzel Jones[2] ("Jones") was residing at the Assisted Unit. (Matalon affidavit, Ex. 5). Specifically, one of the police reports indicates that on February 28, 2005, the police responded to a call from Mr. Basco that his stepdaughter, Tessa Beckner, had run away from home with her boyfriend, Jones. (Matalon affidavit, Ex. 5). The police report indicates that Mr. Basco gave a sworn statement that included the assertion that Jones was staying at the Assisted Unit. (Matalon affidavit, Ex. 5). The police report also indicates that Mr. Basco's sworn statement included the assertion that Mr. Basco had contacted Jones' father and asked him to come by and collect Jones' belongings. (Matalon affidavit, Ex. 5). Additionally, this police report also indicates that Jones' address was the address of the Assisted Unit.

Another police report indicates that on July 18, 2005, the police responded to a call regarding a battery at the Assisted Unit. (Matalon affidavit, Ex. 5). In his statement, Mr. Basco alleged that Tessa Beckner physically assaulted him. (Matalon affidavit, Ex. 5). One of the eyewitnesses to the incident was Jones. (Matalon affidavit, Ex. 5). The police report indicates that Jones' address was the address of the Assisted Unit. (Matalon affidavit, Ex. 5).

---

[2]The police reports refer to Jones as Emanuel Jones and Elonzel Jones.

It is undisputed that Jones is not an authorized resident of the Assisted Unit. Based on the police reports indicating that Jones was living at the Assisted Unit, Sherry Hanson, a Senior Housing Counselor with the Section 8 Program, sent Mrs. Basco a Notice of Intent to Terminate letter ("Termination Notice") on December 2, 2005. (Hanson affidavit,[3] ¶ 15 and Ex. 1 thereto). The Termination Notice advised Mrs. Basco of the intent to terminate her Section 8 housing assistance due to an unauthorized resident in the Assisted Unit in violation of 24 C.F.R. § 982.551, and the police reports were attached to the Termination Notice. (Hanson affidavit, ¶ 15 and Ex. 1 thereto). The Termination Notice also advised Mrs. Basco that if she disagreed with this decision, Mrs. Basco had the right to request an Informal Hearing by December 10, 2005 or the decision would become final. (Hanson affidavit, Ex. 1).

On December 7, 2005, Mrs. Basco requested an Informal Hearing. (Hanson affidavit, Ex. 2). On December 7, 2005, a Notice of Informal Hearing Date letter ("Hearing Notice") was sent to Mrs. Basco, and it stated that the Informal Hearing was scheduled for December 15, 2005. (Hanson affidavit, ¶ 17 and Ex. 3 thereto). The Hearing Notice advised Mrs. Basco that she could view any documents or evidence in the possession of the Housing Agency upon which the Housing Agency based the proposed action to terminate her housing assistance. (Hanson affidavit, Ex. 3). Mrs. Basco did not ask to review any documents or evidence in the possession of the Housing Agency. (Basco depo,[4] p. 31).

The Informal Hearing was held on December 15, 2005 before a Hearing Officer appointed by the Tampa Housing Authority, which is a separate entity from Section 8. (Machin

---

[3]Doc. No. 36

[4]Doc. No. 40

5

affidavit,[5] ¶ 8). In attendance at the Informal Hearing were Mrs. Basco, Vanderlaan, and Matalon. (Matalon affidavit, ¶ 20). At the Informal Hearing, Matalon, on behalf of Section 8, testified as to the facts, based on the police reports, that led Section 8 to conclude that Jones was residing at the Assisted Unit as an unauthorized resident. (Informal Hearing Transcript[6]). Matalon also provided the Hearing Officer with Section 8's entire Basco case file. (Matalon affidavit, ¶ 19).

Mrs. Basco was given an opportunity to present evidence and witnesses at the Informal Hearing. Mrs. Basco and Vanderlaan testified that Jones did not reside at the Assisted Unit. (Informal Hearing Transcript). Additionally, Mrs. Basco submitted a notarized statement from Jones' mother dated December 5, 2005, in which she stated that Jones had only ever lived at two addresses: (1) with her at 7901 Allamanda Avenue and (2) with his paternal grandmother at 3412 West Union Street. (Informal Hearing Transcript, p. 1-2; Matalon affidavit, ¶ 18 and Ex. 9 thereto).

In response to the fact that the police reports indicated that Mr. Basco had told the police officers that Jones had lived at the Assisted Unit, Mrs. Basco offered to call her husband and have him testify over the phone.[7] (Informal Hearing Transcript, p. 10, 17-19). The Hearing Officer did not allow Mrs. Basco to call Mr. Basco.

---

[5]Doc. No. 37

[6]Doc. No. 39

[7]Mr. Basco submitted an affidavit in the instant case in which he stated that he did not attend the Informal Hearing because he needed to be home when his children came home from school. (Doc. No. 50: Mr. Basco's affidavit, ¶ 17). He further states in his affidavit that if he had been allowed to testify over the phone at the Informal Hearing, he would have testified that he did not tell any police officers that Jones lived at the Assisted Unit. (Doc. No. 50: Mr. Basco's affidavit, ¶ 18-19).

After hearing the testimony and reviewing the evidence, the Hearing Officer ruled that Section 8's decision to terminate Mrs. Basco's benefits should be upheld. (Matalon affidavit, Ex. 10). In the "Reason for Decision" section of the Informal Due Process Record, the Hearing Officer stated: "Mrs. Basco could not provide information regarding unauthorized resident. Mr. Basco gave a statement to police that states that Mr. Jones stay [sic] in assist [sic] unit. Landlord who is also Mrs. Basco [sic] mother became upset and demand [sic] extra time to gather more information (records on Mr. Jones). Her request were [sic] denied. Decision is upheld." (Matalon affidavit, Ex. 10).

On January 17, 2006, after the Hearing Officer rendered her decision, Mr. and Mrs. Basco met with Gil Machin, Acting Operations Manager, Section 8, regarding the findings of the Hearing Officer. (Machin affidavit,[8] ¶10, 13). At the meeting, Mrs. Basco presented as new evidence a copy of a Tampa Police Department police report for an incident that occurred on July 18, 2005 where Jones' address was listed as 7217 South Juanita Avenue.[9] (Machin affidavit, ¶ 14 and Ex. 3 thereto). Additionally, Mrs. Basco presented as new evidence a January 10, 2006 notarized letter from Jones stating that he had only lived with his grandmother and mother and that he had never lived at the Assisted Unit.[10] (Machin affidavit, ¶ 15 and Ex. 4 thereto). Machin was not persuaded by the new evidence to overturn the Hearing Officer's decision or to provide Mrs. Basco with a new Informal Hearing. (Mrs. Basco's affidavit,[11] ¶28)

---

[8] Doc. No. 37

[9] However, on the last page of the police report, the address of the Assisted Unit is listed under Jones' name. (Machin affidavit, Ex. 3).

[10] Jones' letter did not indicate his mother or his grandmother's addresses.

[11] Doc. No. 49

7

On January 20, 2006, Machin received a letter from Mrs. Basco's attorney requesting that Machin reject the Hearing Officer's decision and continue payment of her subsidy. (Machin affidavit, ¶ 19). On January 23, 2006, Machin reviewed Basco's case file and the Hearing Officer's decision to determine whether Mrs. Basco met one of the conditions of 24 C.F.R § 982.555(f)[12] to enable Section 8 not to be bound by the hearing decision. (Machin affidavit, ¶ 20). Machin states that based on the multiple inconsistent addresses for Jones, and the fact that neither Mrs. Basco nor her attorney provided any subsequent information to rectify the inconsistencies, he did not believe that, pursuant to § 982.555(f), sufficient reason existed for Section 8 not to be bound by the findings of the Hearing Officer. (Machin affidavit, ¶ 21). As such, on January 30, 2006, Machin responded to Mrs. Basco's attorney's letter that he concurred with the decision of the Hearing Officer. (Machin affidavit, ¶ 22 and Ex. 6 thereto).

Thereafter, Plaintiffs Mr. and Mrs. Basco filed the instant lawsuit asserting two claims against Gil Machin and Patricia Bean[13] in their official capacities. Specifically, Plaintiffs allege that Defendants deprived them of their procedural due process rights under 24 C.F.R.

---

[12] 24 C.F.R. § 982.555(f) provides:

The PHA is not bound by a hearing decision:

(1) Concerning a matter for which the PHA is not required to provide an opportunity for an informal hearing under this section, or that otherwise exceeds the authority of the person conducting the hearing under the PHA hearing procedures.

(2) Contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law.

(3) If the PHA determines that it is not bound by a hearing decision, the PHA must promptly notify the family of the determination, and of the reasons for the determination.

[13] Patricia Bean is the County Administrator for Hillsborough County.

§ 982.555(e)(5) and (6)[14] and 42 U.S.C. § 1983 by failing to accord Plaintiffs the following procedural rights: (1) the opportunity to confront and cross-examine persons who supplied information upon which the housing authority's action is grounded; and (2) the right to have the burden of proof on the public housing agency to prove facts showing that one of the legally permissible grounds for terminating the Section 8 voucher existed.

### III. Motion for Summary Judgment

Defendants move for summary judgment on Plaintiffs' claims, arguing that Defendants did not deprive Plaintiffs of their procedural due process rights under 24 C.F.R. § 982.555(e)(5) and (6) and 42 U.S.C. § 1983. Accordingly, the Court will analyze each of Plaintiffs' alleged due process violations.

#### A. § 982.555(e)(5) and the Opportunity to Confront and Cross-Examine Persons

Defendants argue that there was no violation of § 982.555(e)(5), which provides: "The PHA and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." Plaintiffs respond that § 982.555(e)(5) was

---

[14]24 C.F.R. § 982.555(e)(5) and (6) provide the following hearing procedures:

(5) Evidence. The PHA and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.
(6) Issuance of decision. The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

9

violated by (1) being denied the ability to confront witnesses with direct knowledge of the allegations that formed the basis of the subsidy termination, since the only person who testified on behalf of Section 8 was Matalon, who had no direct knowledge of the alleged violation; (2) being denied the ability to have Mr. Basco testify via telephone; (3) being denied the ability to compel the attendance of witnesses at the Informal Hearing; and (4) the evidence submitted by Section 8 (the police reports) contained hearsay. For the reasons stated below, the Court rejects Plaintiffs' arguments.

"The Supreme Court has established the requirements for due process in the termination of public assistance as follows: (1) timely and adequate notice giving reasons for termination; (2) opportunity to appear at the hearing and to present evidence and . . . [to confront and cross-examine adverse] witnesses; (3) the right to representation by counsel; (4) the right to an impartial decision maker; (5) the right to have the decision based on rules of law and the evidence presented at the hearing; and (6) the right to a written decision by the decision maker outlining the reasons for the decision." Tomlinson v. Machin, 2007 WL 141192, at * 5 (M.D. Fla. Jan. 16, 2007)(citing Goldberg v. Kelly, 397 U.S. 254, 267-71 (1970)). "This standard has been applied to Section 8 certification programs." Id. (citation omitted).

In the instant case, it is undisputed that: Mrs. Basco was given the opportunity for a informal hearing to consider whether her housing assistance payments should be terminated in compliance with § 982.555(a); Mrs. Basco was given the opportunity to request an informal hearing; Mrs. Basco requested an informal hearing; notice of the hearing date was provided to Mrs. Basco; Mrs. Basco was given the opportunity to examine before the hearing any PHA documents that the PHA had planned to use at the hearing; Mrs. Basco was given the

opportunity to present evidence and question any witnesses in attendance at the hearing; and the Hearing Officer provided a written decision, stating briefly the reasons for the decision.

Furthermore, this Court notes that this Court has recently addressed this issue in a similar case, Tomlinson v. Machin, 2007 WL 141192 (M.D. Fla. Jan. 16, 2007). In Tomlinson, the plaintiff, Ms. Tomlinson, submitted her renewal package for Section 8 benefits on July 25, 2004. See id. at *2. In her renewal package, the plaintiff included a Florida drivers license for a Keontae Golden dated May 14, 2004 that listed the assisted unit's address on it. See id. However, the renewal form did not include Mr. Golden as a family member living in the assisted unit. See id. When a Section 8 Housing Counselor asked the plaintiff why Mr. Golden was not listed as a member of the household, the plaintiff stated that she married Mr. Golden on July 31, 2004, but she threw him out. See id.

On July 7, 2005, the plaintiff's landlord (an apartment complex) called Section 8 to provide information about an unauthorized guest in the assisted unit. See id. at *3. Additionally, on August 22, 2005, Section 8 received a letter from the landlord stating that two detectives from the sheriff's office had stopped by to verify that Mr. Golden was in fact residing at the apartment complex and that the detective confirmed to the landlord that Mr. Golden was in the assisted unit. See id. Thereafter, on August 23, 2005, Section 8 sent a Notice of Intent to Terminate Section 8 Benefits to the plaintiff. See id.

The plaintiff requested an Informal Hearing. See id. The following people attended the hearing: the plaintiff, her attorney, the Section 8 Housing Counselor, two representatives of the landlord apartment complex, the assistant city attorney, and the plaintiff's neighbor, Mr. White. See id. at *4.

11

   The Hearing Officer upheld Section 8's decision to terminate the plaintiff's benefits. <u>See</u> <u>id.</u> The Hearing Officer provided the following reasons for her decision:

> The information presented indicates that Ms. Tomlinson had an unauthorized occupant in her unit from at least April 2004 through August 2005. The information supporting this conclusion is as follows:
>
> (1) Mr. Golden's street address (upon arrest on 4/19/04) was reported to HCSO as the assisted unit.
> (2) Mr. Golden obtained a driver's license on 5/14/04 which lists his street address as the assisted living unit.
> (3) A subpoena was returned served to Mr. Golden on 9/1/04 (the Clerk of Courts has recorded the assisted unit as Mr. Golden's address).
> (4) Per the landlord's written and verbal statement HCSO made contact with the assisted unit on 8/9/05 in an effort to locate Mr. Golden-he was found at the assisted unit on this date.
> (5) Also, on 9/20/04, Mr. Golden was sentenced to complete a Diversion Program-at this time Mr. Golden indicated that his address was the assisted unit. [Ms. Tomlinson] indicates that Mr. Golden was not residing with her at this time.
> (6) [Ms. Tomlinson's] witness, Mr. White, stated that he has only frequented [Ms. Tomlinson's] home as of July 2005.
>
> Based on the preponderance of the evidence presented above, this hearing officer concludes that [Ms. Tomlinson] had/has an unauthorized person residing in her unit-as she contends that Mr. Golden did not reside with her during each of the incidents listed above. I must uphold decision to terminate.

<u>Id.</u> at *4.

   Thereafter, the plaintiff filed suit against Machin and Bean in their official capacities, arguing that she was denied her procedural due process rights under § 982.555(e)(5) and § 1983 due to being denied the opportunity to confront and cross-examine persons who supplied information upon which the housing authority's action was grounded. <u>See id.</u> at *5. In rejecting the plaintiff's argument, this Court stated:

> In her complaint, Plaintiff attempts to add to the requirements of §982.555(e)(5) and the Administrative Plan by demanding the right to cross-examine "any witnesses" even those who were not present at the informal hearing. Specifically,

12

certain witnesses at the informal hearing provided information that included hearsay statements that were made to them from other parties. Plaintiff claims that her procedural due process rights have been violated because she was unable to cross-examine the "other parties." Plaintiff argues that PHA should not have based its decision on hearsay statements of other parties who were not present at the informal hearing. Plaintiff also argues that most of the evidence presented by PHA consisted of documents . . . that were prepared by third parties who were not present at the hearing. Plaintiff complains that she was not given the opportunity to cross-examine the third parties that prepared such documents . . ..

Plaintiff's argument is unpersuasive in that [§982.555(e)(5)] specifically states, in pertinent part, that: "Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." Plaintiff seeks to hold Defendants to a much more rigid evidentiary standard than that imposed by HUD or PHA regulations. In a PHA informal hearing, the Hearing Officer is not meant to apply the rules of evidence applicable to judicial proceedings; thus, it is clear by the plain meaning of [§982.555(e)(5)] that hearsay statements and copies of documents may be considered by the Hearing Officer in an informal PHA hearing without regard to the rules of evidence.

Additionally, § 982.555 does not contemplate providing participants the power to subpoena witnesses to attend a PHA informal hearing. Thus, Plaintiff's claim that she was denied procedural due process because she was not provided the right to subpoena witnesses is also without merit.

Based on <u>Tomlinson</u>, this Court finds that Defendants did not deprive Plaintiffs of their procedural due process rights under § 982.555(e)(5) and § 1983. Furthermore, the Court notes that to the extent that Plaintiffs argue that they were denied due process and/or that § 982.555(e)(5) was violated by the Hearing Officer denying Mrs. Basco's request to have her husband testify via telephone, the Court rejects this argument because Plaintiffs have failed to cite any case law or other authority to show that due process and/or § 982.555(e)(5) requires that a person be allowed to have a witness testify via phone. Mr. Basco's appearance in person at the Informal Hearing was within Plaintiffs' control.

Additionally, it appears to this Court that the Hearing Officer upheld the decision to

terminate the family's subsidy due to the fact that the police report indicates that Mr. Basco told the police officer that Jones was living at the Assisted Unit, and Mrs. Basco did not present any evidence to contradict the allegation that Mr. Basco made such a statement. Mr. Basco failed to attend the Informal Hearing or to submit an affidavit to the Hearing Officer explaining that he never told the police officers that Jones lived at the Assisted Unit. Since Mr. Basco's testimony was within Plaintiffs' control, she cannot argue that her due process rights were violated by not being able to question him and/or by having his alleged statements to the police officers used to terminate the family's subsidy.

Accordingly, this Court finds that Defendants did not deprive Plaintiffs of their procedural due process rights under § 982.555(e)(5) and § 1983. As such, the Court grants Defendants' motion for summary judgment on this issue.

### B. § 982.555(e)(6) and the Burden of Proof

Next, Defendants argue that there was no violation of § 982.555(e)(6), which provides: "Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." Plaintiffs respond that §982.555(e)(6) was violated because the burden of proof was not placed on the public housing agency to prove facts showing that one of the legally permissible grounds for terminating the Section 8 voucher existed, i.e., that Jones was residing at the Assisted Unit. For the reasons stated below, the Court rejects Plaintiffs' argument.

The "Visitors" section of the 2004-2005 Administrative Plan for the Section 8 Housing Choice Voucher Program provides the following:

> Any person not included on the HUD 50058 who has been in the unit more than
> 15 consecutive days without PHA approval, or a total of 30 days in a 12 month

> period, will be considered to be living in the unit as an unauthorized household member.
>
> Absence of evidence of any other address will be considered verification that the visitor is a member of the household.
>
> Statements from neighbors and/or landlord will be considered in making the determination.
>
> Use of the unit address as the visitor's current residence for any purpose that is not explicitly temporary shall be construed as permanent residence.
>
> **The burden of proof that the individual is a visitor rests on the family. In the absence of such proof, the individual will be considered an unauthorized member of the household and the PHA will terminate assistance since prior approval was not requested for the addition.**

(Pages 50-51 of the 2004-2005 Administrative Plan)(emphasis added). Clearly, the Administrative Plan places the burden of proof on Plaintiffs to show that Jones was a "visitor" rather than an unauthorized household member. See Tomlinson, 2007 WL 141192, at *8. Plaintiffs have not provided this Court with any binding legal precedent showing that § 982.555(e)(6) requires that the burden of proof should rest on Section 8.[15] See id. at *7 and n.9.

Furthermore, to the extent that Plaintiffs argue that it was improper to put the burden on them to disprove statements in the police report, the Court rejects this argument. As previously stated, it appears to this Court that the Hearing Officer upheld the decision to terminate the family's subsidy due to the fact that the police report indicates that Mr. Basco told the police officer that Jones was living at the Assisted Unit, and Mrs. Basco did not present any evidence to contradict the allegation that Mr. Basco made such a statement. Mr. Basco failed to attend the

---

[15]The same arguments were made by the plaintiff in Tomlinson that are being made in the instant case.

15

Informal Hearing or to submit an affidavit to the Hearing Officer explaining that he never told the police officers that Jones lived at the Assisted Unit. Since Mr. Basco's testimony was within Plaintiffs' control, it was not improper to place the burden on Plaintiffs to show that Mr. Basco did not tell the police officers that Jones lived at the Assisted Unit.

Accordingly, this Court finds that Defendants did not deprive Plaintiffs of their procedural due process rights under § 982.555(e)(6) and § 1983. As such, the Court grants Defendants' motion for summary judgment on this issue.

## IV.  Conclusion

Upon consideration, it is ORDERED AND ADJUDGED that:

(1)   Defendants' Request to Take Judicial Notice (Doc. No. 41) is **GRANTED**;

(2)   Plaintiffs' Unopposed Request for Oral Argument Upon Defendants' Motion for Summary Judgment (Doc. No. 48) is **DENIED**;

(3)   Defendants' Motion for Summary Judgment (Doc. No. 34) is **GRANTED**; and

(4)   The Clerk is directed to enter judgment in favor of Defendants, terminate all pending motions, and close the case.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of February, 2007.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge